UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| ERIC VIRRUETA,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>THE CITY OF HURON; KEVIN VAN DIEPEN, Chief of Police, in his individual and official capacity; DENNIS MAUDE, Police Officer, in his individual and official capacity; DEREK LAYHER, Security/Police Officer-Detective, in his individual and official capacity; and PHILLIP VAN DIEPEN, Sergeant, in his individual and official capacity,<br><br>　　　　　　Defendants. | 4:21-CV-04131-KES<br><br><br>ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED IN FORMA PAUPERIS AND 1915A SCREENING |

Plaintiff, Eric Virrueta, an inmate at the South Dakota State Penitentiary, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Docket 1. This court ordered him to pay his full filing fee or move for in forma pauperis status by August 30, 2021. Docket 4. Virrueta moves for leave to proceed in forma pauperis and included his prisoner trust account report on August 11, 2021. Dockets 5, 6.

**I.   Motion to Proceed Without Prepayment of Fees**

Virrueta reports average monthly deposits of $0.00 and an average monthly balance of $0.00. Docket 6. Under the Prison Litigation Reform Act (PLRA), a prisoner who "brings a civil action or files an appeal in forma

pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). " '[W]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan.' " *Henderson v. Norris*, 129 F.3d 481, 483 (8th Cir. 1997) (quoting *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of "(A) the average monthly deposits to the prisoner's account; or (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal." Based on the information regarding Virrueta's prisoner trust account, the court grants Virrueta leave to proceed without prepayment of fees and waives the initial partial filing fee. *See* 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

In order to pay his filing fee, Virrueta must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2). The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the appropriate financial official at Virrueta's institution. Virrueta remains responsible for the entire filing fee, as long as he is a prisoner. *See In re Tyler*, 110 F.3d 528, 529-30 (8th Cir. 1997).

## II.  1915A Screening

### A.  Factual Background

The facts alleged in Virrueta's complaint are: that while trying to enter the Tamarac apartment building in Huron, South Dakota, through a locked door after visiting an associate there, he was approached by Officer Dennis Maude of the Huron Police Department. Docket 2 at 2; Docket 1-1 at 4-5. Officer Maude was looking for a different individual reported to be at the building by Officer Derek Layher, who worked part-time as a private security officer at the building. Docket 2 at 2; Docket 1-1 at 3-5. Officer Maude asked Virrueta his name, to which he replied, "Gary." Docket 2 at 2. Officer Maude asked Virrueta if he lived there, to which he said no. *Id.* Officer Maude then asked Virrueta if he had a license on him and whether he had anything in his pockets. *Id.* Virrueta claims his response to both questions was inaudible,

while Officer Maude testified that the answer to both questions was no. *Id.*; Docket 1-1 at 14.

Officer Maude then ordered Virrueta to take his hands out of his pockets. Docket 2 at 2. Virrueta initially refused, then complied, slowly removing a hammer from his pocket "in a non-threatening manner." *Id.* at 2-3. Officer Maude then grabbed the hammer, threw it away, and yelled at Virrueta to get on the ground while "physically taking him to the ground." *Id.* at 3. At this point, only thirty-two seconds had elapsed since Officer Maude first made contact with Virrueta. *Id.* Virrueta struggled against Officer Maude and refused to be handcuffed. *Id.* Other officers arrived to assist, and Virrueta was tased by Sergeant Phillip Van Diepen, handcuffed, and searched. *Id.*; Docket 1-1 at 22. Virrueta had to go to the hospital. Docket 1 at 5. Evidence of drug activity, including methamphetamine and a digital scale, were found on Virrueta, according to Officer Maude. Docket 1-1 at 16-17. Virrueta believes that he was singled out on racial grounds because he was a "Hispanic male" who "happened to be wearing nice clothes[.]" Docket 2 at 1-2.

Virrueta asserts claims for excessive force and unreasonable seizure under the Fourth Amendment and violation of his Equal Protection rights under the Fourteenth Amendment against the City of Huron, Chief of Police Kevin Van Diepen, Officer Dennis Maude, Officer Derek Layher, and Sergeant Phillip Van Diepen. Docket 1 at 2-3. He sues all defendants in their individual and official capacities. *Id.* He seeks three million dollars in monetary damages. *Id.* at 5.

4

### B. Legal Background

The court must assume as true all facts well pleaded in the complaint. *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Civil rights and pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted). If it does not contain these bare essentials, dismissal is appropriate. *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Twombly* requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true[.]" *Twombly*, 550 U.S. at 555 (internal citation omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (noting that a complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[ ] to state a claim upon which relief may be granted; or (2)

seek[ ] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The court will now assess each individual claim under 28 U.S.C. § 1915A.

### C. Legal Analysis

#### 1. Claims against the City of Huron

Virrueta brings claims against the City of Huron as a defendant in this matter. Docket 1 at 2. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A municipal government may be sued only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. *Id.* Here, Virrueta makes no allegations as to the City of Huron's policies or customs. Thus, his claims against the City of Huron are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

#### 2. Official Capacity Claims

Virrueta brings claims against the remaining defendants in their individual and official capacities. Docket 1 at 2-3. These individuals are employed by the City of Huron Police Department. "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Virrueta's official capacity claims against Officer Maude, Officer Layher, Sergeant Van Diepen, and Chief Van Diepen are the

equivalent of claims against the City of Huron. Under *Monell*, Virrueta must show that the "execution of a government's policy or custom" deprived him of a federal right. 436 U.S. at 694. Virrueta makes no allegations regarding the City of Huron's policies or customs. Thus, his claims against the remaining defendants in their official capacities are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### 3. Individual Capacity Claims against Defendant Van Diepen

Virrueta names Huron Chief of Police Kevin Van Diepen as a defendant but does not set forth any facts about Chief Van Diepen's actions in his complaint. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable . . . only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

*Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). Because Virrueta does not assert facts that allege Chief Van Diepen participated in the unconstitutional conduct or that he failed to supervise or train the other defendants, Virrueta's claims against Chief Van Diepen are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 4. Individual Capacity Claims Against Defendants Dennis Maude, Derek Layher, and Phillip Van Diepen

#### a. Fourth Amendment Claims

Virrueta claims that the remaining Huron Police Department defendants used excessive force against him and that he was unreasonably searched and seized. Docket 1 at 3-4. The Fourth Amendment protects against "unreasonable searches and seizures[.]" U.S. Const. amend. IV. The Fourth Amendment also guarantees the right to be free from excessive force during an arrest or investigation. *Jackson v. Stair*, 944 F.3d 704, 710-11 (8th Cir. 2019) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)).

#### i. Unreasonable Seizure

Seizures that are brief are still within the scope of the Fourth Amendment. *See Terry v. Ohio*, 392 U.S. 1, 16-19 (1968). "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Id.* at 16. A seizure must be reasonable, and a less intrusive seizure's reasonableness will depend on "a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) (internal quotation omitted). An officer can detain someone briefly for questioning but cannot make an arrest without probable cause. *Terry*, 392 U.S. at 25-26.

Virrueta argues Officer Maude was unreasonable both in initially stopping him and in conducting a *Terry* search. Docket 2 at 3-4. He claims that

8

Officer Maude had no justification for the initial stop other than knowing that there was a person around who had been told to leave. *Id.* at 3. Because Officer Maude had no description of this person, Virrueta argues that the stop was nothing more than a hunch. *Id.* at 3-4. He also claims that the *Terry* search was unreasonable because a reasonable person would not believe that his safety was threatened given the circumstances. *Id.* at 4. He alleges that, other than not removing his hand from his pocket right away, he did nothing that would indicate Officer Maude was in danger. *Id.* For purposes of screening, Virrueta has alleged sufficient facts to support a Fourth Amendment unreasonable seizure claim against Officer Maude.

Virrueta also attaches a transcript of his South Dakota Circuit Court preliminary hearing in which Officers Layher and Maude testify as to these events. Docket 1-1. Officer Layher, who was working as a private security guard at the time, observed Virrueta being allowed into an apartment by a resident and later walk along the outside of the building. *Id.* at 4-6. Officer Layher testified that he told Virrueta that he did not live there and that he needed to leave the property. *Id.* at 6. Virrueta indicates in a margin note that this was a lie; he claims that Officer Layher never spoke to him and that Officer Layher pointed him out to the cops at this time. *Id.* Virrueta argues that he had permission to be on the property because he was visiting a resident. *See id.*

In his accompanying brief, Virrueta's unreasonable seizure claim focuses on Officer Maude's initial stop and *Terry* search. *See* Docket 2 at 3-4. In the attached hearing transcript, Virrueta writes in margin notes that Officer Layher

9

had no reason to suspect him or to report him to the police but makes no mention of any other facts connecting Officer Layher to the alleged unreasonable seizure. *See* Docket 1-1 at 3-10. Officer Layher's report to the police, acting in his private employment capacity, does not constitute an unreasonable seizure. Also, Virrueta alleges no facts accusing Sergeant Van Diepen of any conduct connected to an unreasonable seizure. Thus, Virrueta's unreasonable seizure claims against Officer Layher and Sergeant Van Diepen in their individual capacities are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### ii. Excessive Force

The United States Supreme Court "has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. "[T]he Fourth Amendment requires us to ask, from the perspective of a reasonable officer on the scene, 'whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.' " *Franklin v. Peterson*, 878 F.3d 631, 635 (8th Cir. 2017) (quoting *Graham*, 490 U.S. at 397).

Here, Virrueta alleges that the force used was not objectively reasonable. Docket 2 at 5-6. He claims he was compliant other than briefly hesitating to remove his hand from his pocket. *Id.* He claims that he was not resisting arrest or attempting to flee. *Id.* at 6. He also claims that he was tased unnecessarily by Sergeant Van Diepen, although he acknowledges that he was resisting

10

Officer Maude at this time. Docket 1 at 4; Docket 2 at 3. Although he mentions that other officers eventually arrived, Virrueta alleges no specific facts connecting Officer Layher to the uses of excessive force. *See* Docket 2 at 5-6. For purposes of screening, Virrueta has alleged sufficient facts to support a Fourth Amendment excessive force claim against Officer Maude and Sergeant Van Diepen. Virrueta's excessive force claim against Officer Layher in his individual capacity is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### b. Fourteenth Amendment Equal Protection Claim

Virrueta asserts that he was "singled out and arrested" because he is a Hispanic male who "happened to be wearing nice clothes[.]" Docket 2 at 1-2. "[T]he Constitution prohibits selective enforcement of the law based on considerations such as race." *Whren v. United States*, 517 U.S. 806, 813 (1996). A plaintiff must show that the officer exercised discretion to enforce the law on account of race, "which requires proof of both discriminatory effect and discriminatory purpose." *Johnson v. Crooks*, 326 F.3d 995, 1000 (8th Cir. 2003) (citing *United States v. Armstrong*, 517 U.S. 456, 465 (1996)) (stating that when a plaintiff alleged the officer's traffic stop was due to his race, he had stated a "cognizable equal protection claim."). "When the claim is . . . a racially-motivated arrest, the plaintiff must normally prove that similarly situated individuals were not stopped or arrested in order to show the requisite discriminatory effect and purpose." *Id.* at 1000.

Here, although Virrueta argues that his stop, search, and arrest were racially motivated, the only facts he alleges are that because Officer Maude had no description of a suspect, his actions must have been motivated by race. *See* Docket 2 at 1-2. Virrueta has not alleged any facts that show discrimination on the part of Officer Maude or that similarly situated individuals were treated differently. *See id.* Thus, Virrueta's equal protection claims against the remaining Huron Police Department defendants in their individual capacities are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Thus, it is ORDERED:

1. That Virrueta's motion to proceed in forma pauperis (Docket 5) is granted.

2. That the institution having custody of Virrueta is directed that whenever the amount in Virrueta's trust account, exclusive of funds available to him in his frozen account, exceeds $10.00, monthly payments that equal 20 percent of the funds credited the preceding month to Virrueta's trust account shall be forwarded to the U.S. District Court Clerk's Office under 28 U.S.C. § 1915(b)(1), until the $350 filing fee is paid in full.

3. That Virrueta's Fourth Amendment claims for unreasonable seizure and excessive force against defendant Dennis Maude in his individual capacity survive 28 U.S.C. § 1915A review.

4. That Virrueta's Fourth Amendment claim for excessive force against defendant Phillip Van Diepen in his individual capacity survives 28 U.S.C. § 1915A review.

5. That all of Virrueta's other claims against the remaining defendants are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

6. That the Clerk shall send blank summons forms and Marshal Service Form (Form USM-285) to Virrueta so that he may cause the complaint to be served upon defendants.

7. That Virrueta shall complete and send the Clerk of Court a separate summons and USM-285 form for each defendant. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summons. If the completed summons and USM-285 form are not submitted as directed, the complaint may be dismissed.

8. The United States Marshal Service shall serve the completed summonses, together with a copy of the complaint (Docket 1) and this order, upon the defendants.

9. Defendants will serve and file an answer or responsive pleading to the amended complaints and supplement on or before 21 days following the date of service or 60 days if the defendants fall under Fed. R. Civ. P. 12(a)(2) or (3).

10. Virrueta will keep the court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the court's Local Rules while this case is pending.

Dated September 27, 2021.

        BY THE COURT:

        /s/ *Karen E. Schreier*
        KAREN E. SCHREIER
        UNITED STATES DISTRICT JUDGE