UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| ERIC VIRRUETA,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>DENNIS MAUDE, Police Officer, in his individual capacity; and PHILLIP VAN DIEPEN, Sergeant, in his individual capacity,<br><br>　　　　　　Defendants. | 4:21-CV-04131-KES<br><br><br>ORDER GRANTING SUMMARY JUDGMENT TO DEFENDANTS DENNIS MAUDE AND PHILLIP VAN DIEPEN |

　　　　Plaintiff, Eric Virrueta, an inmate at the South Dakota State Penitentiary, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Docket 1. After screening, what remains is a claim against defendants Dennis Maude and Sergeant Phillip Van Diepen for excessive force and a claim against Maude for unreasonable seizure. Docket 7 at 12-13. Maude and Van Diepen now move for summary judgment. Docket 15. Virrueta has not responded to the motion for summary judgment and the time to respond has passed. Because there are no questions of material fact and Maude and Van Diepen are entitled to a judgment in their favor as a matter of law, the court grants their motion for summary judgment.

**I.　Factual Background**

　　　　Viewing the evidence in the light most favorable to Virrueta, as the

non-moving party, the facts are:[1]

On December 9, 2019, Virrueta was at the Tamarac Apartment Building in Huron, South Dakota, even though he was not a resident. Docket 17 at 1-2. While Derek Layher, a security guard with Integrity Security, was conducting a security check of the building, he saw Virrueta have a conversation with a Tamarac Apartment resident that appeared suspicious. *Id.* at 2. Layher later encountered Virrueta walking directly alongside the porch areas of the Tamarac Apartment building. *Id.* Layher told Virrueta to leave the premises at least twice, because he was suspicious of Virrueta's actions and Virrueta did not live there. *Id.* Layher contacted law enforcement and informed them of the situation. *Id.* at 3.

Maude is an officer with the Huron Police Department. *Id.* Maude was informed by Sergeant Van Diepen of an individual who was asked to leave the Tamarac Apartment premises and refused and who was now on the north side of the building. *Id.* Maude drove to the north side and saw the individual attempting to access a locked door. *Id.* When Maude made contact with the individual, he asked the individual for his name, identification and whether he had anything in his pockets that Maude needed to worry about. *Id.* The

---

[1] Because Maude and Van Diepen move for summary judgment, the court recites the facts in the light most favorable to Virrueta. Under Local Civil Rule 56.1(D), "All material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's response to the moving party's statement of material facts." Virrueta did not object to defendants Maude and Van Diepen's Statement of Undisputed Material Facts (Docket 17), so the court deems those statements to be admitted.

2

individual provided Maude with a fake name, had no identification, and said he did not have anything in his pockets for Maude to worry about. *Id.* at 3. When Maude asked Virrueta to remove his hands from his pockets, he refused and suddenly pulled a claw hammer out of his pocket. *Id.* at 4. Maude grabbed the hammer and attempted to handcuff Virrueta. *Id.* Virrueta resisted by wrapping his arms around a handrail. *Id.*

Sergeant Van Diepen saw the physical altercation between Maude and Virrueta. *Id.* Van Diepen exited his patrol vehicle to assist Maude. *Id.* Van Diepen and Maude were able to break Virrueta's grip from the handrail and place him on the ground. *Id.* The officers gave Virrueta verbal commands that he disobeyed and Virrueta refused to give them his hands. *Id.* After Maude told Van Diepen that Virrueta pulled a hammer out of his pocket, Van Diepen attempted to use the knee strike technique to gain control of Virrueta. *Id.* The verbal commands and knee strike techniques failed. *Id.* at 5. As a result, Van Diepen deployed his taser. *Id.* As a result, Maude and Van Diepen were finally able to gain control of Virrueta. *Id.* Virrueta was placed under arrest and transported to the hospital because a taser had been deployed against him. *Id.* While at the hospital, he was searched and approximately 5.75 ounces of methamphetamine, multiple baggies, a digital scale, and syringes were located on his person. *Id.* Virrueta's motion to suppress the evidence based on Fourth Amendment violations in his state court criminal case was denied. *Id.*

## II. Legal Standard

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by presenting evidence that there is no dispute of material fact or by showing that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To avoid summary judgment, "[t]he nonmoving party may not rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (internal quotation omitted). The underlying substantive law identifies which facts are "material" for purposes of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Essentially, the availability of summary judgment turns on whether a proper jury question is presented: "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved . . . in favor of either party." *Id.* at 250. Prisoners who proceed pro se are entitled to the benefit of liberal construction at the pleading stage. *Quam v. Minnehaha Cnty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987). Nonetheless, the summary judgment standard set forth in Rule 56 of the Federal Rules of Civil Procedure remains applicable to prisoners proceeding pro se. *Id.* The district court is not

required to "plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996).

Courts must remain sensitive, however, "to the special problems faced by prisoners attempting to proceed pro se in vindicating their constitutional rights, and [the Eighth Circuit does] not approve summary dismissal of such pro se claims without regard for these special problems." *Nickens v. White*, 622 F.2d 967, 971 (8th Cir. 1980). "[W]hen dealing with summary judgment procedures technical rigor is inappropriate where . . . uninformed prisoners are involved." *Ross v. Franzen*, 777 F.2d 1216, 1219 (7th Cir. 1985).

### III. Fourth Amendment Claims

Virrueta claims that Maude and Van Diepen used excessive force against him and that Maude unreasonably searched and seized him. Docket 1 at 5. Maude and Van Diepen both assert qualified immunity as a defense. Docket 18 at 8-10. Under the two-part test that applies to the qualified immunity analysis, the court must determine "[w]hether, 'taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right[,]' " and whether the right in question was "clearly established." *Littrell v. Franklin*, 388 F.3d 578, 582 (8th Cir. 2004((first alteration in original)(quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The Fourth Amendment protects against "unreasonable searches and seizures[.]" U.S. Const. amend. IV. The Fourth Amendment also guarantees the right to be free from excessive force during an arrest or investigation. *Jackson v. Stair*, 944 F.3d 704, 710 (8th Cir. 2019) (citing *Graham v. Connor*, 490 U.S.

386, 394-96 (1989)). Here, there is no dispute that the rights are clearly established. The issue is whether the officers' conduct violated a constitutional right.

### A. Unreasonable Seizure

Seizures that are brief are still within the scope of the Fourth Amendment. *See Terry v. Ohio*, 392 U.S. 1, 16-19 (1968). "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Id.* at 16. A seizure must be reasonable, and a seizure's reasonableness will depend on "a balance between the public interest and the individual right to personal security free from arbitrary interference by law officers." *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) (citation omitted). An officer can detain someone briefly for questioning but cannot make an arrest without probable cause. *Terry*, 392 U.S. at 25-26. But "mere police questioning does not constitute a seizure." *Muehler v. Mena*, 544 U.S. 93, 101 (2005). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage." *Id.* (alternation in original).

Here, the undisputed facts establish that the security guard at Tamarac Apartments contacted law enforcement and informed them that a suspicious person who did not live at Tamarac Apartments was present on the property and he refused to leave after being asked to leave. Docket 17 at 2. When Maude arrived at the property, he saw Virrueta attempt to enter a locked door at the

6

Tamarac Apartments. *Id.* at 3. When Maude asked the individual for his name, identification, and whether he had anything in his pockets that Maude needed to worry about, the individual gave a fake name, had no identification, and denied having anything in his pockets that Maude should be worried about. *Id.* at 3-4. When Maude asked Virrueta to remove his hands from his pockets, Virrueta refused and suddenly he pulled a claw hammer out of his pocket. *Id.* When Maude attempted to handcuff Virrueta, Virrueta resisted and a physical altercation occurred, ultimately resulting in the arrest of Virrueta. *Id.* at 4-5.

Maude acted within the scope of the Fourth Amendment at all times. Based on the security guard's report and Maude observing Virrueta try to enter a locked door, he had sufficient reason to ask Virrueta questions about his name, request identification, and determine safety issues. When Virrueta lied in response and refused to remove his hands from his pockets, Maude's suspicions grew. Then, when Virrueta engaged in further noncompliance and brandished a dangerous weapon, he had probable cause to search and seize Virrueta. As a result, the court finds that Virrueta has not shown that Maude's conduct violated his Fourth Amendment constitutional right to be free from unreasonable seizure.

### B. Excessive Force

The United States Supreme Court "has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. "[T]he Fourth Amendment requires us to ask, from the perspective

of a reasonable officer on the scene, 'whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.' " *Franklin v. Peterson*, 878 F.3d 631, 635 (8th Cir. 2017) (quoting *Graham*, 490 U.S. at 397).

Here, Virrueta pulled a full-sized claw hammer out of his pocket, unannounced, after telling Maude he had nothing in his pockets that Maude should be worried about. Docket 17 at 3-4. In addition, he refused to comply with Maude and Van Diepen's verbal commands, and he refused to give them his hands so he could be handcuffed. *Id.* at 4. The responses by Maude and Van Diepen under these circumstances were objectively reasonable in light of the facts and circumstances confronting them. As a result, the court finds that Virrueta has not shown that Maude and Van Diepen's conduct violated his Fourth Amendment constitutional right to be free from excessive force.

## CONCLUSION

The evidence is undisputed because Virrueta did not object to Maude and Van Diepen's Statement of Undisputed Material Facts. As a result, those statements are deemed admitted. After considering the undisputed evidence, the court concludes that Virrueta's Fourth Amendment constitutional rights to be free from unreasonable seizure and excessive force have not been violated. Maude and Van Diepen are entitled to summary judgment in their favor. Thus, it is

ORDERED that defendants' motion for summary judgment (Docket 15) is granted.

Dated November 9, 2022.

                BY THE COURT:

                /s/ *Karen E. Schreier*
                KAREN E. SCHREIER
                UNITED STATES DISTRICT JUDGE